Camila Cossío (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427 ext. 427
ccossio@biologicaldiversity.org
Pro Hac Vice Admission Pending

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. Fish and Wildlife Service; Martha Williams, in her official capacity as Director of the U.S. Fish and Wildlife Service; and Deb Haaland, in her official capacity as Secretary of the U.S. Department of the Interior,<br><br>　　　　Defendants. | Case No._____<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.　　Plaintiff Center for Biological Diversity ("Center") brings this case challenging the U.S. Fish and Wildlife Service's ("Service") failure to issue timely 12-month findings on the Center's petition to list the southern bog turtle DPS and the roughhead shiner in violation of the Endangered Species Act's ("ESA" or "Act")

1

nondiscretionary, congressionally mandated deadlines. The agency's failure to meet the deadlines delays crucial, lifesaving protections for the southern bog turtle DPS and the roughhead shiner, increasing their risk of extinction.

2. Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated section 4(b)(3)(B) of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to timely issue a 12-month finding for the southern bog turtle DPS and the roughhead shiner and directing the Service to issue the findings by a date certain.

## JURISDICTION

3. This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); 28 U.S.C. §§ 2201–2202; and 5 U.S.C. § 706(2).

4. Plaintiff provided Defendants with 60-days' notice of the ESA violation as required by 16 U.S.C. § 1540(g)(2)(A) by a notice letter to the Service for the southern bog turtle DPS dated July 1, 2024 and a notice letter to the Service for the roughhead shiner dated July 8, 2024. Defendants have not remedied the violations set out in the notice and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Plaintiff resides in this judicial district.

## PARTIES

6. Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States. The Center has more than 89,000 active members throughout the country.

7. The Center brings this action on behalf of its organization, and its staff and members who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from these species and their habitat. As a multitude of threats continue to push the southern bog turtle DPS and the roughhead shiner dangerously close to extinction, Plaintiff's members' interests in protecting and recovering these species and their habitat are directly harmed by the Service's failure to issue timely findings.

8. For example, the professional, economic, aesthetic, and recreational interests of Center member Will Harlan, Southeast Director and Senior Scientist at the Center, are harmed by the Service's delay in issuing the southern bog turtle's 12-month finding. Harlan is a herpetologist who wrote a national bestselling book about turtles and has professional and economic concerns about the turtle's welfare and survival. He visits the bog turtle's habitat regularly for herpetological research and exploration and intends to visit again in spring 2025. He also recreates in the bog turtle's habitat with his family and intends to regularly return to explore the wetlands with his family in the spring, specifically to the French Broad River and wetlands in the Mills River where the bog turtles occur. Harlan has spent much of his time searching for southern bog turtles and plans to continue to do so, the Service's failure to protect the turtles harms his ability to continue searching for them because they likely will be pushed to extinction without ESA protections.

9. The aesthetic and recreational interests of Center member Steve Welgos are harmed by the Service's delay in issuing the shiner's 12-month finding. Welgos recently searched for the shiner near tributaries where the fish occurs that cross the Appalachian Trail. He was unable to find any fish and intends to return to hike in the area with friends and search for the shiner in spring 2025. The loss of the shiner would be harmful to Welgos as he has not had the opportunity to observe this species, despite his efforts to search for it. It will also harm Welgos's experience in nature because the roughhead

shiner will likely go extinct without ESA protections and his aesthetic and recreational experience will be lessened knowing that the shiner no longer exists.

10. Defendants' violation of the ESA's nondiscretionary mandatory deadline has delayed the ESA's protections for the southern bog turtle DPS and the roughhead shiner, harming the Center's members' interests in them by decreasing the likelihood that these members will encounter the species as part of their personal and professional excursions. These injuries are actual, concrete injuries that are presently suffered by the Center's members, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries. The Center and its members have no other adequate remedy at law.

11. Defendant U.S. FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior charged with implementing the ESA for the southern bog turtle DPS and the roughhead shiner. The Secretary of the Interior has delegated administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

12. Defendant MARTHA WILLIAMS is the Director of the Service and is charged with ensuring that agency decisions comply with the ESA. Defendant Williams is sued in her official capacity.

13. Defendant DEB HAALAND is the Secretary of the U.S. Department of the Interior and has the ultimate responsibility to administer and implement the provisions of the ESA. Defendant Haaland is sued in her official capacity.

**STATUTORY FRAMEWORK**

**The Endangered Species Act**

14. The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

4

15. The ESA has a suite of substantive and procedural legal protections that apply to species once they are listed as endangered or threatened. For example, section 4(a)(3) of the Act requires the Service to designate "critical habitat" for each endangered and threatened species. *Id.* § 1533(a)(3).

16. In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any endangered or threatened species or "result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* §1536(a)(2).

17. ESA section 9 prohibits, among other actions, "any person" from causing the "take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§ 1538(a)(1)(B), 1539; see also *id.* § 1532(19) (defining "take"). Other provisions require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

18. The ESA defines a "species" as "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16). A "distinct population segment" of a species is known as a "DPS." When considering whether a population segment qualifies as a DPS under the Act, Service policy requires the agency to determine whether the population is "discrete" and "significant." If the Service determines that a population segment is both discrete and significant, then the population qualifies as a DPS and meets the ESA's definition of a "species" that may be classified as threatened or endangered.

19. A species is "endangered" when it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A species is "threatened" when it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

20. The ESA requires the Service to determine whether any species is endangered or threatened because of any of the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. *Id.* § 1533(a)(1).

21. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). This is known as the "90-day finding." If the Service finds in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process concludes.

22. If the Service determines that a petition does present substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

23. Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but precluded" by other proposals for listing species, provided certain circumstances are met. *Id.* § 1533(b)(3)(B).

24. If the Service determines that listing is "warranted," the agency must publish that finding in the Federal Register along with the text of a proposed regulation to

list the species as endangered or threatened and take public comments on the proposed listing rule. *Id.* § 1533(b)(3)(B)(ii).

25. Within one year of publication of the proposed listing rule, the Service must publish in the Federal Register the final rule implementing its determination to list the species. *Id.* § 1533(b)(6)(A). This is known as a "final listing rule."

## FACTUAL BACKGROUND

**The southern bog turtle DPS**

26. The southern bog turtle DPS (*Glyptemys muhlenbergii*) is a distinct population of bog turtles, genetically isolated from the northern population. The southern population occurs from southern Virginia to northern Georgia. The bog turtle is North America's smallest and rarest turtle species. Because of its small size and attractive appearance, bog turtles are one of the most popular animals in the wildlife trade and poaching continues to wipe out populations.

27. In the past twenty years, the southern bog turtle has declined by at least 50 percent. Only 14 viable populations remain across its five-state southern range. The southern bog turtle's total known population is likely less than 2,000 individuals. The remaining population consists of few juvenile turtles and has extremely low juvenile survival rates and little to no recruitment, which has led to a population precipice: adults are rapidly disappearing, and no juveniles are replacing them.

28. The southern bog turtle DPS is further threatened by habitat destruction, overutilization, disease and predation, inadequacy of existing regulatory mechanisms, and natural and manmade factors affecting its continued existence.

**The roughhead shiner**

29. The roughhead shiner (*Notropis semperasper*) is a small olive-colored minnow named for the distinctive bumps on its head. It lives only in the James River watershed in Virginia and nowhere else on Earth.

30. It is threatened with extinction primarily due to displacement by a non-native shiner species, the telescope shiner which has a 10-state range and has been

introduced outside its native range in Virginia as well as into the state of West Virginia. It is also threatened by habitat disturbance and climate change which is altering the shiner's sensitive freshwater habitat with extreme heat, flooding, and heavy rainfall events.

31. The roughhead shiner was first flagged for conservation attention over 50 years ago and the state of Virginia is aware of the imperiled status of the fish but has lacked the funding to research or improve its situation. ESA protection would immediately help protect the shiner through a recovery plan and federal funding to restore the remaining populations.

**Listing Petition and Response**

32. The Center petitioned the Service to list the southern bog turtle DPS in 2022. In October of that year, the Service published a 90-day finding that the petition to list the southern bog turtle DPS presented "substantial scientific or commercial information indicating the petitioned entity may qualify as a DPS and that listing … may be warranted due to loss and degradation of wetland habitat," and that "development, vehicles and roads, overutilization (i.e., collection and poaching), disease and predation, invasive species, climate change, succession and lack of wetlands management, small population size and other biological factors may be threats to the southern population of bog turtle and regulatory mechanisms may be inadequate to address these potential threats." 87 Fed. Reg. 63470 (Oct.19, 2022).

33. Because the Service found that the petition may be warranted, its 12-month finding was due one year after receipt of the petition. The deadline for publication of the 12-month finding for the southern bog turtle DPS was January 1, 2023, and therefore it is past due.

34. The Center petitioned the Service to list the roughhead shiner in 2022. The following year, the Service published a 90-day finding that the petition to list the shiner presented substantial scientific or commercial information indicating listing may be warranted. 88 Fed. Reg. 16933, 16936 (Mar. 21, 2023). Specially, the Service found that based on its review of the petition, the shiner may warrant listing due to threats from

8

"habitat modification from siltation and/or contamination (Factor A), and competition from the introduced telescope shiner." *Id.*

35. Because the Service found that the petition may be warranted, it was required to publish a 12-month finding one year after it received the petition. The deadline for publication of the 12-month finding for the roughhead shiner was March 25, 2023, and therefore it is past due.

36. Until Defendants timely issue the statutorily overdue 12-month findings, the southern bog turtle DPS and the roughhead shiner will continue to lack necessary protections under the Act, contributing to their decline.

## CLAIMS FOR RELIEF

**Violation of the ESA for Failure to Publish a Timely 12-Month Findings for the Southern bog turtle DPS and the Roughhead shiner**

37. Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

38. The ESA requires the Service to publish a 12-month finding within 12 months of receiving a petition to list a species under the Act, when it makes a 90-day finding that listing may be warranted. In response to the Center's petitions, the Service issued 90-day findings for the southern bog turtle DPS and the roughhead shiner and thus 12-month findings were due 12 months after the petitions were submitted. Defendants failed to perform their nondiscretionary duty to publish these 12-month findings, in violation of the ESA. 16 U.S.C. § 1533(b)(3)(B).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1. Declare that Defendants violated the ESA by failing to issue a timely 12-month listing determination in response to the Center's petition to list the southern bog turtle DPS and the roughhead shiner;

9

2. Provide injunctive relief compelling Defendants to issue the 12-month findings by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein;

4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

5. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated this 25th day of November, 2024.

*/s/ Camila Cossío*
Camila Cossio (OR Bar No. 191504)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: (971) 717-6727 ext. 427
ccossio@biologicaldiversity.org
Pro Hac Vice Admission Pending

*Attorney for Plaintiff*